UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANIELLE POINTER, <br> and D.P., <br> <br> Plaintiffs, <br> <br> v. <br> <br> MARZETTA JENKINS, <br> and ROBERT CARTER, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:19-cv-03758-TWP-MJD <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Robert Carter ("Officer Carter") and Marzetta Jenkins ("Sergeant Jenkins") (collectively, "Defendants") (Filing No. 61). Plaintiffs Danielle Pointer ("Pointer") and D.P. (collectively, "Plaintiffs") filed this lawsuit for civil rights violations following a fight that occurred at D.P.'s high school. Following discovery, the Defendants moved for summary judgment on the Plaintiffs' claims, arguing that the undisputed facts show no constitutional violations occurred. For the following reasons, the Court **grants** the Defendants' Motion.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the Plaintiffs as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Much of the facts are corroborated by video evidence.

The facts giving rise to this action occurred on August 29, 2019. On the date of the incident, D.P. was a minor child, age 16, and a student at Shortridge High School ("Shortridge"), which is within the Indianapolis Public Schools school district. Pointer is D.P.'s mother (Filing No. 6 at 1–2). Defendant Sergeant Jenkins is a law enforcement supervisor employed by the Indianapolis Public Schools Police Department ("IPSPD"). Defendant Officer Carter is a law enforcement officer employed by IPSPD. Officer Carter and Sergeant Jenkins are empowered by state statute with the same law enforcement authority as any other law enforcement officers within Marion County (Filing No. 6 at 2; Filing No. 15 at 2).

On August 29, 2019, D.P. and his cousin A.W. approached a group of other students at Shortridge in an attempt to resolve a disagreement between A.W. and the group of students. The other students were walking ahead of D.P. and A.W., and D.P. stopped them. D.P. and A.W. did not initiate any fighting with them. However, another student punched A.W., and D.P. tried to push away that student to protect A.W., and then a large fight broke out. The melee broke up into separate fights with one of them involving D.P. and a group of students and the other involving A.W. and a group of students. D.P. believes that he was fighting four people, and A.W. was fighting four to six people. In all, there were approximately sixteen students involved in the fighting (Filing No. 63-2 at 9–16; Filing No. 63-4 at 3).

The incident, captured by video surveillance of the school hallway, depicts the following. D.P. is first visible in the Shortridge surveillance video at 1:14:27 p.m. and is seen wearing a dark hoodie sweatshirt and dark colored track pants with white stripes on each side (Filing No. 73, Manually-filed Shortridge Video at 1:14:27). The fight among the students began around 1:15:18 p.m., and while the fight initially appeared to end, it restarted multiple times. D.P. estimated that the fighting lasted fifteen to twenty seconds, and then he "got maced." Officer Carter, who was in

the hallway when the altercation began, retrieved his chemical spray from his duty belt at approximately 1:15:35 p.m. and began deploying the chemical spray at approximately 1:15:38 p.m. (Filing No. 73, Manually-filed Shortridge Video at 1:15:18–1:15:38; Filing No. 63-2 at 16).

When the chemical spray was being deployed, D.P. clearly was being attacked by a group of other students. He was punched in the face and then punched several more times to the face or head area until he was forced against a row of lockers. During this portion of the fight, D.P. was not actively doing anything other than attempting to shield his head and face from further blows. At the time the chemical spray was initially deployed, D.P. and the other students who were subjected to the spray were actively fighting. Officer Carter deployed the spray only against the actively fighting students (Filing No. 73, Manually-filed Shortridge Video at 1:15:33–1:16:00; Filing No. 63-2 at 17). D.P. did not see the chemical spray being deployed. When the chemical spray hit D.P., he fell to the ground in a fetal position and covered his head because he could not see (Filing No. 63-2 at 10, 17, 39; Filing No. 63-4 at 3; Filing No. 73, Manually-filed Shortridge Video at 1:15:44).

Several adult Shortridge staff members physically intervened to help stop the fighting around the area where D.P. was laying on the floor, and Officer Carter continued walking around the hallway, trying to disperse the crowd and dispel the fighting. A staff member pulled students off of D.P. and escorted him to the school nurse (Filing No. 73, Manually-filed Shortridge Video at 1:16:00–1:16:50; Filing No. 63-2 at 10, 16–17).

Although D.P. suffers from asthma, his exposure to the chemical spray did not cause him to have an asthma attack and did not require him to use his inhaler. The effects of the spray caused D.P. to have irritation and burning to his skin and eyes. D.P. did not require treatment for his

exposure to the chemical spray other than washing his eyes with water (Filing No. 63-2 at 18–19, 22, 40–41).

D.P. was never arrested or placed in handcuffs. D.P. sent a text message to his mother to come to the school because he had been attacked. When Pointer arrived at the school to get D.P. and A.W., she was not permitted to remain in the building because the school was on lockdown. Because Pointer was not allowed inside the school, D.P. left the nurse's office and walked out of the school to meet her. Once outside the school, D.P. encountered Pointer, and she was yelling at two IMPD police officers. Pointer was asked to leave the school grounds, and she told officers that she could not leave because she was missing A.W.. Sergeant Jenkins later brought A.W. out of the school with zip-ties around his hands. When Pointer asked why A.W. was in zip-ties, Sergeant Jenkins indicated that he would not stop fighting (Filing No. 63-2 at 25–30).

D.P., A.W., Pointer, Sergeant Jenkins, and the two IMPD police officers were standing outside in front of the school, and Pointer and the two IMPD police officers were arguing about getting A.W.'s items from the school. At some point, D.P. pulled out his cell phone and started recording the interaction between Pointer and the IMPD officers. No one stopped D.P. from recording, and no one tried to stop him from recording (Filing No. 63-2 at 30–32; Filing No. 73, Manually-filed Video of Incident Shortridge). An onlooker across the street also recorded the interaction between Pointer and the IMPD officers (Filing No. 73, Manually-filed Third-party Video of Incident).

As Pointer and the IMPD officers engaged in the heated argument, one of the IMPD officers threatened to arrest Pointer. A.W. walked in front of the IMPD officer who then delivered a closed-fist punch to A.W.'s face and struck him with a knee blow to the abdomen. Pointer immediately ran to A.W.'s side and placed her arms protectively around A.W. to shield him from

any further attack from the IMPD officer (Filing No. 63-2 at 32–33; Filing No. 73, Manually-filed Video of Incident Shortridge at 00:00 to 00:19; Filing No. 73, Manually-filed Third-party Video of Incident at 00:29 to 00:55).

D.P. continued recording the incident, and he tried to approach Pointer and A.W., but Sergeant Jenkins told him to back up, saying "start walking" and motioning for him to do so. Sergeant Jenkins never put her hands on D.P., and Sergeant Jenkins never tried to take D.P.'s phone away from him. None of the police officers that day physically touched D.P. (Filing No. 63-2 at 39–40, 44–45; Filing No. 73, Manually-filed Video of Incident Shortridge at 00:19 to 00:27; Filing No. 73, Manually-filed Third-party Video of Incident at 00:55 to 01:15).

Less than one week after these incidents, on September 4, 2019, the Plaintiffs filed this action against the IMPD officer who struck A.W. in the face and two unidentified IPSPD officers (Filing No. 1). Then approximately a month later, the Plaintiffs filed an Amended Complaint to replace the two unidentified IPSPD officers with Officer Carter and Sergeant Jenkins and removed A.W. as a plaintiff in this case (Filing No. 6). On February 20, 2020, the Plaintiffs filed a joint stipulation of dismissal, dismissing the action against the IMPD officer who struck A.W. in the face (Filing No. 47; Filing No. 48). On August 21, 2020, the Plaintiffs filed their Statement of Claims, asserting an excessive force claim against Officer Carter for "indiscriminately deploy[ing] a chemical agent directly toward D.P., the victim." (Filing No. 60 at 4.) In their Statement of Claims, the Plaintiffs assert a First Amendment speech claim against Sergeant Jenkins for "expressly prohibit[ing] D.P. from recording police activity." *Id.* at 5. The Defendants seek judgment as a matter of law, arguing the undisputed facts show no constitutional violations occurred.

## II.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion

for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations omitted).

### III.   DISCUSSION

The Defendants ask the Court to enter summary judgment on the excessive force claim against Officer Carter and the First Amendment claim against Sergeant Jenkins. The Court will first address the excessive force claim and then turn to the First Amendment claim.

**A.   Excessive Force Claim Against Officer Carter**

For their excessive force claim against Officer Carter, the Plaintiffs' entire argument is the following:

> "[A]ll claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other `seizure' of a free citizen should be analyzed under the Fourth Amendment and its `reasonableness' standard."; *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592-93 (7th Cir. 1997) (where an offender is resisting arrest, an officer can use that amount of force necessary to overcome the offender's resistance), *cert. denied*, 522 U.S. 1116 (1998). However, in this case, it is unclear whether Officer Carter effected any "seizure" of D.P. In such a case, D.P.'s recourse is grounded in the Fourteenth Amendment. "The guarantee of due process serves to protect 'the individual against arbitrary action of government.'" *Schaefer v. Goch*, 153 F.3d 793, 797 (7th Cir. 1998) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).
>
> In this case, D.P. did nothing that would have justified his arrest or detention by Officer Carter. Rather, D.P. was a high school student inside of an enclosed and crowded school hallway. D.P. was the clear victim of battery, as depicted on the surveillance footage. Although Officer Carter may have been distracted for a legitimate reason (i.e. perhaps the smart phone operation was related to his mission of providing safety and security), he indiscriminately deployed a chemical agent directly toward D.P., the victim.

(Filing No. 71 at 4–5.)

The Defendants argue,

> [The] Plaintiffs must prove that Carter: (1) acted under color of state law, a point which is undisputed here; and (2) deprived D.P. of some right under the Constitution or the laws of the United States. *Livadas v. Bradshaw*, 512 U.S. 107,

7

> 132, 114 S. Ct. 2068 (1994). By D.P.'s own account, Officer Carter deployed a chemical spray into a large group of students who were fighting and had been doing so for several seconds.

([Filing No. 62 at 5](Filing No. 62 at 5).)

The Defendants assert there is no showing that Officer Carter's force was excessive when properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness of an officer's decision must be determined from the view of the officer based upon the knowledge he had at the time of the incident. *Id.* at 396. The determination must be made objectively without regard to the officer's intent or motivation. *Id.* at 397. Courts consider factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. Ultimately, the excessive force inquiry looks to whether the force used to seize the suspect was excessive in relation to the danger he posed to the community or the arresting officer if left unattended. *See McDonald v. Haskins*, 966 F.2d 292, 294 (7th Cir. 1992). Excessive force claims are governed by a Fourth Amendment objective reasonableness standard and must be evaluated from the perspective of the reasonable officer on the scene rather than with the 20/20 vision of hindsight. *O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. Ct. App. 2000) (quoting *Graham*, 490 U.S. at 388, 396–97).

The Defendants point out that the video evidence designated by the Plaintiffs shows the large fight that was ongoing in the hallway of a public school during school hours at the time the chemical spray was discharged by Officer Carter. The video also shows numerous students standing by, all of whom could have been hurt by, or joined in, the fight. The Defendants argue

that the chemical spray was indisputably administered in short bursts and in a reasonable manner. In fact, the Defendants argue, it had no effect on the active fighters.

The Defendants further argue there is no question as to the reasonableness of Officer Carter's force given D.P.'s sworn testimony in his deposition and the video evidence that D.P. was in the midst of an active fight with several other students at the time the chemical spray was deployed. Officer Carter is depicted on the video expending short bursts of a chemical spray in different directions and not focusing on any one individual. Anyone involved in the brawl would have been subject to exposure to the chemical spray since it disperses in the air and is not focused on a particular individual, unlike the deployment of a Taser or a strike with a baton. However, the deployment of a chemical spray is most appropriate in a large group setting such as in this case where time is of the essence and the need to control several students at once exists. The need to control violent outbursts and maintain good order and institutional discipline is important at schools. D.P.'s only claim of excessive force is that Officer Carter expelled the chemical spray in close enough proximity to D.P. that D.P. experienced burning in his eyes and irritation to his skin. This court should conclude as a matter of law that the *de minimis* force used to break up a violent fight among numerous students was objectively reasonable and that Officer Carter is entitled to summary judgment.

Depending on the circumstances of a case, for excessive force claims, under the Fourth Amendment, the Court utilizes the "objective reasonableness" standard, *Graham*, 490 U.S. at 388, or under the Fourteenth Amendment, the Court protects the substantive due process right against arbitrary police action by looking at whether the police action "shocks the conscience." *Schaefer*, 153 F.3d at 797–98. Under either standard, Officer Carter is entitled to summary judgment on the Plaintiffs' excessive force claim.

The undisputed designated evidence in the form of surveillance video and deposition testimony clearly shows that Officer Carter discharged the chemical spray while a large fight involving multiple people was ongoing in the hallway of a public school during school hours. By the Plaintiff's account, there were at least 16 students involved in the fight. There were multiple bystanders who could have been hurt or joined the fight. The initial spray did not end the active fighting, and Officer Carter administered additional short bursts of the spray in different directions, not focusing on any one individual. The evidence shows that Officer Carter did not target D.P. with his spray. The use of chemical spray is appropriate in a large group setting where time is of the essence and the need to control several individuals at once exists. Officer Carter's use of *de minimis* force to break up a violent fight among numerous students was objectively reasonable and also fails to shock the conscience. Therefore, Officer Carter is entitled to summary judgment on the Plaintiffs' excessive force claim.

**B.     First Amendment Claim Against Sergeant Jenkins**

Next, the Plaintiffs assert a First Amendment speech claim against Sergeant Jenkins for "expressly prohibit[ing] D.P. from recording police activity." (Filing No. 60 at 5.) The Plaintiffs point out that the right to record the activities of police in a public setting was clearly established in 2012, following the Seventh Circuit's opinion in *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012). In that case, the Seventh Circuit ultimately held that the act of audiovisual recording of police officers engaged in official duties in public places is protected by the First Amendment. *Id.* at 608.

> The Plaintiffs argue,
>
> Here, Sgt. Jenkins expressly prohibited D.P. from recording police activity, which ultimately led to charges against the IMPD officer related to this excessive use of force. Sgt. Jenkins did not attempt to place reasonable time, place, or manner restrictions on D.P., but instead wholesale interfered with his right to record his

>    government officials by telling him to "start walking." Sgt. Jenkins violated D.P.'s
>    First Amendment rights, as clearly established under *Alverez*.

(Filing No. 71 at 7.)

The Plaintiffs acknowledge that a citizen's right to record is subject to reasonable time, place, and manner restrictions. "While an officer surely cannot issue a 'move on' order to a person *because* he is recording, the police may order bystanders to disperse for reasons related to public safety and order and other legitimate law-enforcement needs." *Alvarez*, 679 F.3d at 607 (emphasis in original).

The Defendants argue that D.P.'s deposition testimony shows the First Amendment claim is unfounded. Specifically, D.P. admitted that Sergeant Jenkins never touched him nor attempted to stop him from recording the incident on his cell phone. According to D.P., all Sergeant Jenkins did was tell him to back away and motion for him to back away from the incident. Additionally, D.P. admitted that Sergeant Jenkins never tried to take his cell phone away from him. The Defendants admit that, had Sergeant Jenkins seized D.P.'s phone or prevented him from recording, this Court would have a First Amendment issue to consider. But they argue that, given D.P.'s admission that Sergeant Jenkins did not interfere with his ability to record the events and that he was able to successfully record them, the Plaintiffs' First Amendment claim must fail.

Furthermore, the Defendants argue, the Plaintiffs' assertion that Sergeant Jenkins violated D.P.'s First Amendment rights by telling him to "start walking" is contradicted by their very next point, which is that in *Alvarez*, the court held that an officer may order bystanders to disperse for reasons related to public safety and order and other legitimate law-enforcement needs. That is clearly what Sergeant Jenkins was attempting to do since IMPD was on the scene and was actively arguing with Pointer.

Upon review of the designated evidence—especially D.P.'s deposition testimony and the video evidence—the Court concludes that the First Amendment claim must be dismissed by summary judgment. Sergeant Jenkins's direction to D.P. to "start walking" was not a command to stop video recording the police conduct. It is clear from the video evidence that Sergeant Jenkins was creating physical space for public safety and other legitimate law-enforcement needs. Sergeant Jenkins did not touch D.P., did not stop him from recording the incident, did not attempt to stop him from recording the incident, and did not attempt to seize the phone from him. Sergeant Jenkins simply told D.P. to back away and motioned for him to do so. Sergeant Jenkins did not interfere with D.P.'s ability to record the events. The First Amendment claim necessarily fails. Therefore, Sergeant Jenkins is entitled to summary judgment on the Plaintiffs' First Amendment claim.

### IV.     CONCLUSION

For the reasons discussed above, Defendants Robert Carter's and Marzetta Jenkins's Motion for Summary Judgment (Filing No. 61) is **GRANTED**. Plaintiffs Danielle Pointer's and D.P.'s claims are dismissed on summary judgment, the trial and final pretrial conference are hereby **VACATED**, and final judgment will issue under separate order.

**SO ORDERED.**

Date:   9/28/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Terrance Lamont Kinnard
KINNARD & SCOTT
tkinnard@kinnardlaw.net

Caren L. Pollack
POLLACK LAW FIRM, P.C.
cpollack@pollacklawpc.com